UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PHILIP F. PIERCE, | : | |
| and SHARON C. PIERCE | : | |
| PLAINTIFFS, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:04-cv-1767 (JCH) |
| EMIGRANT MORTGAGE CO., | : | |
| EMIGRANT SAVINGS BANK, | : | |
| and RETAINED REALTY, INC., | : | SEPTEMBER 29, 2005 |
| DEFENDANTS. | : | |

**RULING ON DEFENDANTS' MOTION TO DISMISS [DKT. NO. 13]**

The plaintiffs, Philip F. Pierce and Sharon C. Pierce, who are residents of Connecticut, bring this action for declaratory relief, breach of contract, unjust enrichment, civil conspiracy, and a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110 et seq., against the defendants, Emigrant Mortgage Company, Inc. ("Emigrant Mortgage"), Emigrant Savings Bank, and Retained Realty, Inc., all of which are corporations with their principal places of business in New York. The suit arises out of the terms of a loan agreement that the plaintiffs had entered into with Emigrant Mortgage. The defendants removed this action from the Connecticut Superior Court for the Judicial District of Stamford, pursuant to 28 U.S.C. §§ 1441 and 1446. Jurisdiction is based on the diversity of citizenship of the parties, pursuant to 28 U.S.C. § 1332.

The plaintiffs' claims are predicated on the assertion that the terms of the loan were unconscionable and violative of Connecticut's usury law, Conn. Gen. Stat. § 37-4. The defendants move to dismiss the plaintiffs' claims in their entirety under Fed.R.Civ.P. Rule 12(b)(6), arguing that the loan agreement does not violate section

37-4, and is thus not void under the statute or unconscionable. In their motion, the defendants argue that, by demonstrating that the loan does not violate section 37-4, they have also shown that the loan is not unconscionable. Unconscionability, however, is a doctrine that is independent of the Connecticut usury law. See Hamm v. Taylor, 180 Conn. 491, 496-97 (1980). As the defendants have not addressed unconscionability as such in their motion to dismiss, the court considers their motion to be a partial motion to dismiss pertaining only to the claim that the loan agreement violated section 37-4. On the basis of the foregoing analysis, the defendants' motion is GRANTED in part and DENIED in part.

**I. Factual Background**[1]

In December 1998, the plaintiffs entered into a loan agreement with Emigrant Mortgage in the principal amount of $650,000 at a variable rate of interest. The initial interest rate was 6.5%, which was subject to change yearly on the basis of a formula contained within the loan agreement. The loan was secured by a mortgage owned alone by Sharon Pierce on the plaintiffs' residence in Greenwich, Connecticut. Incorporated into the loan agreement was a rider providing that, in the case of default, the interest rate on the loan will be increased to 18%. Compl., Ex. A [Dkt. No. 28]. The loan agreement also provides that the lender may accelerate the loan in the event of default. Subsequently, Emigrant Mortgage assigned the loan and the mortgage to Emigrant Savings Bank.

---

[1] The court takes the facts alleged in plaintiffs' complaint as true, as it must, and draws all inferences in plaintiffs' favor. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984)

At some point in 1999 or 2000, the plaintiffs were no longer able to make their regular monthly loan payment as required by the loan agreement. By letter in July 2000, Emigrant Mortgage, on behalf of Emigrant Savings, notified the plaintiffs that their loan was in default and was therefore accruing interest at the 18% default interest rate. The letter also indicated that, if the plaintiffs failed to cure the default by August 16, 2000, the loan would be accelerated and become due in its entirety.

In August 2003, Emigrant Mortgage brought an state court action to collect on the loan agreement and foreclose on the mortgage. Emigrant Savings subsequently assigned the loan and mortgage to Retained Realty. While the state court action was pending, Sharon Pierce sold the Greenwich property. In a November 2003 letter, Retained Realty demanded payment of $1,053,570.73 before it discharged the loan in full and withdrew the 2003 action. The Pierces paid this sum to Retained Realty but retained, by letter accompanying this settlement amount, their right to pursue any legal remedy they may have.

The plaintiffs brought the present action, seeking a declaration that the loan was void ab initio because it was unconscionable and violative of Conn. Gen. Stat. § 37-4. The complaint also asserts, on behalf of Philip Pierce alone, claims for breach of contract, breach of implied contract, unjust enrichment, breach of the duty of good faith and fair dealing, a violation of CUTPA, and civil conspiracy. The defendants move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the plaintiffs' suit, arguing that they fail to state claims upon which relief can be granted.

**II. Standard of Review**

A motion to dismiss filed pursuant to Rule 12(b)(6) can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Reed v. Town of Branford, 949 F. Supp. 87, 89 (D. Conn. 1996). In considering such a motion, the court accepts the factual allegations alleged in the complaint as true and draws all inferences in the plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

"In considering a motion to dismiss . . . a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference . . . [and review all allegations] in the light most favorable to the non-moving party." Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662 (2d Cir. 1996). "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

**III.    DISCUSSION**

**A. Violation of Conn. Gen. Stat. § 37-4**

The plaintiffs' causes of action are predicated in part on their assertion that the 18% default interest rate contained in their loan agreement violated the protection

against usury contained in Conn. Gen. Stat. § 37-4.  Section 37-4 provides that "[n]o person and no firm or corporation or agent thereof . . . shall, as guarantor or otherwise, directly or indirectly, loan money to any person and, directly or indirectly, charge, demand, accept or make any agreement to receive therefor interest at a rate greater than twelve per cent per annum."  Conn. Gen. Stat. § 37-4.  The plaintiffs argue that the default interest rate clearly violated the provisions of this statute.

The defendants make two arguments in response.  First, they argue that the loan agreement is excepted from the prohibition in section 37-4 by Conn. Gen. Stat. § 37-9(3), which provides that section 37-4 does not apply to "any bona fide mortgage of real property for a sum in excess of five thousand dollars."  Conn. Gen. Stat. § 37-9.  Second, they argue that, under Connecticut law, post-default interest rates are not subject to the prohibition of section 37-4.

The parties have dedicated the majority of their briefs to debating the applicability of the mortgage exception in section 37-9 to the claims in this case.  However, as the plaintiffs have pointed out, the exception only applies to mortgages which have been determined to be "bona fide," which is a determination that cannot be made on the basis of this motion to dismiss. "Bona fides of the mortgage is an attribute essential to [the] exception . . . . Whether or not this qualification is fulfilled necessarily depends upon the facts established in the particular case.  Its existence could not probably be assumed from the pleadings for purposes of demurrer . . . ." Atlas Realty Corp. v. House, 120 Conn. 661, 671-72 (1936)(internal citation omitted), overruled on other grounds by Ferrigno v. Cromwell Development Associates, 244 Conn. 189 (1997). "A party seeking to come within an exception to the usury statutes has the burden of

proving the applicability of that exception." Washington v. House of God Outreach and Deliverance Ministries, Inc., No. CV990367559S, 2002 WL 1842988, at *3 (Conn. Super. 2002); M.M.M. Mortgage Co. v. Frankford, No. 318987, 1993 WL 117718, at *2 (Conn. Super. 1993)(citing Mut, Prot. Corp. v. Palatnick, 118 Conn. 1, 5 (1934) and Maresca v. DeMatteo, 6 Conn.App. 691, 696 (1986)). Thus, this court cannot conclude, under Rule 12(b)(6), whether the bona fide mortgage exception renders section 37-4 inapplicable to the plaintiffs' claims.

The court does conclude, however, that under Connecticut law, section 37-4 does not apply to the post-default interest rates at issue in this case. The reasoning of the court in Scientific Products v. Cyto Medical Laboratory, Inc, 457 F.Supp. 1373 (D.Conn. 1978), finding that section 37-4 does not apply to post-default penalties, is persuasive. While a Connecticut court has not ruled decisively on the issue, in Scientific Products, Judge Blumenfeld found that, generally, cases in many jurisdictions have held that "since charges of this nature are within the borrower's control, they are penalties for non-payment, rather than charges for the use of money, and, therefore, [are] not affected by the usury laws." Id. at 1379. Judge Blumenfeld explained that: "[a] debtor may not, by his voluntary act, render a transaction usurious which, but for such circumstances, would be entirely free from a claim of usury." Id. at 1379 (quoting 91 C.J.S. Usury § 31, at 609 (1955)). The court in Scientific Products also examined Connecticut statutory law and found that "the conceptual distinction between default charges and interest for the use of money has been recognized in Connecticut." Id. (citing Conn. Gen. Stat. §§ 36-225 to 36-243, now Conn.Gen.,Stat. §§ 36a-555 to 36a-647 (2004)). It is worth noting that Connecticut case law has also recognized a

distinction between pre- and post-maturity interest rates.  See Globe Inv. Co. v. Barta, 107 Conn. 276, 277 (1928)("It should be noted . . . that we are not dealing in this case with the most frequent and usual contract which prescribes the rate of interest before maturity but mentions no rate after maturity.");

It appears to this court that the holding of Scientific Products reflects the rule in the majority of states, as well the rule of Connecticut's neighboring states.  See J.D. Perovich, Annotation, Provision for Interest after Maturity at a Rate in Excess of Legal Rate as Usurious or Otherwise Illegal, 28 A.L.R.3d 449 (2004)("[A] provision in a note or other contract for the payment of money by which the debtor agrees to pay after maturity interest at a higher rate than permitted by the usury laws is generally considered as not rendering the contract usurious."); Raldne Realty Corporation v. Stern, 319 Mass. 726, 726 (1946); Florida Land Holding Corp. v. Burke, 238 N.Y.S. 1, 2 (1929)("When an excessive rate of interest is made payable only in the event of default in payment of the principal on its due date, there is no usury, because the debtor may relieve himself of all liability by paying the principal and interest theretofore due.").  The plaintiffs point us to the holding of the Montana Supreme Court in Scarr v. Boyer, 250 Mont. 248 (1991), in which the court examined the same question and reached the opposite conclusion, i.e., the Montana usury law applied to post-default interest rates. However, the Scarr court noted that, unlike most usury statutes, the Montana usury statutes explicitly apply to the detention of money, as well as loans and forbearances, and acknowledged that its holding deviates from the majority rule.  Id. at 251.  Thus, the court finds that under Connecticut law, for the reasons identified by the court in Scientific Product, the plaintiffs cannot claim that the post-default interest rate

contained within their loan agreement is violative of Conn. Gen. Stat. § 37-4.

**B. Plaintiffs' Specific Claims**[2]

The defendants argue that each of the plaintiffs' claims is insufficient as a result of having shown that Conn. Gen. Stat. § 37-4 does not apply to post-default interest rates.  As discussed above, the defendants did not address in their motion to dismiss the plaintiffs' assertion that the terms of the loan agreement were unconscionable, and thus, to the extent that the plaintiffs' claims are predicated on unconscionability, their claims survive and the defendants' motion is denied.  The court will consider in turn the defendants' arguments regarding the insufficiency of the plaintiffs' claims that do not turn on the applicability of section 37-4 or the unconscionability doctrine.

1. Declaratory Relief

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ."[3]  28 U.S.C. § 2201. The Declaratory Judgment Act "permits declaratory relief only in cases presenting 'actual controvers[ies],' . . . a

---

[2] In their Memorandum in Reply to Plaintiffs' Memorandum in Opposition [Dkt. No. 18], the defendants argue, for the first time, that Philip Pierce did not sustain any damages personally and thus cannot state any claim for relief.  As this argument was presented in their reply memorandum, the plaintiffs did not have an opportunity to respond to it and it will not be considered by this court.  See Local Rules of Civil Procedure 7(d).

[3] The defendants treat the plaintiffs' declaratory judgment action as being governed by Connecticut law.  However, because the Declaratory Judgment Act is procedural in nature, under the Erie doctrine, it governs actions for declaratory judgments in diversity suits in federal court.  See Häagen-Dazs Shoppe Co. v. Born, 897 F.Supp. 122, 126 n.2 (S.D.N.Y. 1995)(citing cases).

requirement that incorporates into the statute the case or controversy limitation on federal jurisdiction found in Article III of the Constitution." Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians, 94 F.3d 747, 752 (2d Cir.1996) (citations omitted). "For a court to have subject matter jurisdiction over a declaratory judgment action, there must be 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " Id. (citation omitted). "Whether a real and immediate controversy exists in a particular case is a matter of degree and must be determined on a case-by-case basis." Kidder, Peabody & Co., Inc. v. Maxus Energy Corp., 925 F.2d 556, 562 (2d Cir. 1991).

The plaintiffs seek a declaration that the loan agreement was void ab initio due to its illegality and unconscionability. The defendants argue that, because the plaintiffs have paid their loan in full and have been released from their mortgage, there is no ongoing contractual relationship between the parties, and the plaintiffs have thus not presented an actual controversy. However, when the plaintiffs tendered the demanded amount to Retained Realty, in settlement of the state court action, they specifically reserved their rights to bring legal action to remedy the "damages proximately caused by their usurious and unfair trade practices." Compl, Ex. F. Thus, the court cannot conclude that the plaintiffs' previous settlement extinguished the claims arising out of their loan agreement with the defendants, and the court, at the motion to dismiss stage, is not otherwise inclined to deny the plaintiffs' claim for declaratory relief.

2. Breach of Contract

Philip Pierce asserts that the defendants, by charging an excessive or

unconscionable amount of interest, breached paragraph six of the loan agreement, which provided that interest and loan charges shall be reduced to comply with any legal limit that was found to be applicable to it.  The defendants argue that, since the loan agreement is not usurious, they could not have breached the agreement.  However, as discussed above, Pierce's claim that the agreement's terms were unconscionable have not been addressed, and thus the defendants' motion to dismiss is denied as to this claim.

### 3. Breach of Implied Contract

Philip Pierce asserts a claim for breach of implied contract. "An implied contract is an agreement between the parties which is not expressed in words but which is inferred from the acts and the conduct of the parties . . . . The test is whether the conduct and acts of the parties show an agreement." Brighenti v. New Britain Shirt Corp.,167 Conn. 403, 406 (1974)(internal citations omitted). Pierce asserts that, "although the Note is void ab initio, Emigrant Mortgage and Mr. Pierce implicitly agreed that Mr. Pierce would not be charged an excessive or unconscionable amount of interest upon any default by him on the Loan." Compl., Third Count, ¶ 22 [Dkt. No. 1]. The defendants argue that, the note was not void, and, because it was not usurious, there was no breach.  For the reasons stated above, Pierce's allegations may be sufficient to state a claim for relief on the basis of unconscionability.

### 4. Unjust Enrichment

Philip Pierce asserts a cause of action for unjust enrichment.  "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit

which has come to him at the expense of another." Gagne v. Vaccaro, 255 Conn. 390, 408 (2001) (quoting Franks v. Lockwood, 146 Conn. 273, 278, 150 A.2d 215 (1959)). The elements of the claim are that, "(1) the defendant benefitted; (2) the defendant unjustly failed to pay the plaintiff for the benefits; and (3) the failure of payment was to the plaintiff's detriment." Kull v. Davidoff of Geneva , No. 01-CIV-4821, 2004 WL 1418088, at 15 (S.D.N.Y. June 23, 2004)(citing Gagne, 255 Conn. at 409).

Pierce asserts that "as a result of the exorbitant, illegal, and unconscionable rate of interest charged by Defendants and Retained Realty's refusal to issue a payoff letter to Mrs. Pierce unless it received payment of the huge sums it demanded, Mr. Pierce was compelled to pay to Retained Realty an amount of interest on the Loan that was enormously inflated, to his detriment." Compl., Fourth Count, ¶ 22.   The defendants argue that because the loan was not usurious, they were not unjustly enriched. However, as discussed above, Pierce's claim that the agreement's terms were unconscionable have not been addressed, and thus the defendants' motion to dismiss is denied as to this claim.

     5. <u>Breach of Duty of Good Faith and Fair Dealing</u>

Philip Pierce asserts a cause of action against the defendants for breach of the duty of good faith and fair dealing. "To constitute a breach of [that duty], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith.  Bad faith means more than mere negligence; it involves a dishonest purpose." Collins v. Anthem Health Plans, Inc., 275 Conn. 309, 333-34 (2005)(quoting De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., 269 Conn. 424, 433 (2004)).

Pierce asserts that "Retained Realty's refusal to discharge the Mortgage unless or until Mr. Pierce paid the exorbitant and unconscionable sums it demanded was a ploy designed to place him under duress so that he would be compelled to accede to their unjust demands." Compl., Fifth Count, ¶ 25.  The defendants argue that they were within their rights under the loan agreement to accelerate the loan and demand the higher rate of interest.  However, given the plaintiff's assertions about the defendants' "plot," the plaintiff has sufficiently alleged the bad faith element of this cause of action, and the defendants' motion as to this claim is therefore denied.

### 6. CUTPA Violation

Philip Pierce asserts a cause of action for violation of CUTPA.  Conn. Gen. Stat. § 42-110b provides that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b.  To determine whether an practice violates CUTPA, courts examine these factors:  "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." Sanghavi v. Paul Revere Life Ins. Co., 214 Conn. 303, 311-312 (Conn.1990)(citations omitted).  "[T]o be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an 'ascertainable loss' due to a CUTPA violation." Collins, 275 Conn. at 334-335.

The defendants argue that the plaintiff cannot sustain his CUTPA claim because,

without a claim of usury, the plaintiff cannot show an unfair trade practice to sustain his burden of proof.  The plaintiff's assertions regarding unconscionability, however, could fulfill the required elements of the plaintiffs' CUTPA claim, and thus the defendants' motion is denied as to this claim.

    7. <u>Civil Conspiracy</u>

Philip Pierce's final cause of action asserts a claim for civil conspiracy against the defendants.  "The [elements] of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff."  <u>Harp v. King</u>, 266 Conn. 747, 779 (2003)(internal quotation marks omitted.). "[T]here is no independent claim of civil conspiracy. Rather, [t]he action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself. Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort."  <u>Larobina v. McDonald</u>, 274 Conn. 394, 408 (Conn. 2005).

The plaintiff asserts that the defendants "agreed to engage in the making, maintenance, and collection of the Note to Mr. Pierce upon unconscionable terms pursuant to a scheme and in furtherance of the object of engaging in an unfair trade practice prohibited by Conn. Gen. Stat. § 42-110a [sic]." Compl., Seventh Count, ¶ 27. The plaintiff has therefore alleged a substantive violation that can serve as a predicate to his conspiracy claim.  The defendants argue that, because their practices were not usurious under statute, the plaintiff's claim must fail. For the reasons stated above, the

-13-

defendants' motion to dismiss this claim is denied.

### IV. Conclusion

For the foregoing reasons, defendants Emigrant Mortgage Company, Inc., Emigrant Savings Bank, and Retained Realty, Inc.'s Motion to Dismiss [Dkt. No. 13] is hereby GRANTED in part and DENIED in part.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 29th day of September, 2005.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge